UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

IN RE:                                                                                            CHAPTER 12

    Tony Dian Perkins                                                           CASE NO: 16-10383

MEMORANDUM IN SUPPORT OF OBJECTION TO APPLICATION OF BB&T
FOR DEFAULT INTEREST AND FOR ATTORNEY FEES

May it please the Court:

    BB&T holds promissory notes of the Debtor which earn interest at various rates. The largest unpaid BB&T note earns contract interest on $679,117.90 at 4.25%[1]; another earns interest on $224,017.19 at 4.75% and a third earns interest on $559,932.49 at 5.69%.[2] A contractual default interest rate of an additional 5% is sought, in addition to the contract amounts, on each note.

    Therefore, BB&T's request for its default interest doubles its contract rates. Any presumption of reasonability or allowability of the default rate, arising out of the BB&T's proof of claim, is rebutted because that rate it seeks (i.e., 4.25% + 5% = 9.25%) is significantly higher than the pre-default rate, without any justification for the increased rate. *In re Terry Ltd. Partnership*, 27 F.3d 241, 243 (7th Cir. 1994).

    The Debtor has acknowledged from the first day of this case that BB&T was fully secured. She agrees that it is entitled to its contract rate from the filing date to the effective date of her plan, but no more. She objects to the application of the default interest rate and its crippling effect upon her reorganization and the recovery by unsecured creditors.

---

    [1] All interest rates are per annum.

    [2] BB&T maintains that its interest accruing debt on the day of filing was $1,687,084.77. The requested five percent default rate is greater than the contract rate on $903,135.09 of this debt. If allowed the default rate, plus the contract rate, more than doubles the interest rate to be paid to BB&T.

1

The Court's inquiry must begin with 11 U.S.C. 506(b):

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

In *United States v. Ron Pair Enters,. Inc.*, 489 U.S. 235 (1989), the Supreme Court interpreted that provision as allowing reasonable fees, costs or charges to be dictated by a loan agreement, but not the rate of interest. *In re Terry Ltd. Partnership*, 27 F.3d 241, 243 (7th Cir. 1994).

*Ron Pair* has been interpreted as requiring a court to determine the equities of the allowance of default interest. *In re Laymon*, 958 F.2d 72 (5th Cir. 1992). Courts have refused to allow default interest rates which are thirty six percent higher than the contract rate. *In re Hollstrom*, 133 B.R. 535, 1991 Bankr. LEXIS 1651 (Bankr. Colo. 1991). A twenty-five percent increase was disallowed. *In re DWS Invest., Inc.*, 121 B.R. 845 (Bankr. C.D. Cal. 1990). An increase of forty three percent was disallowed and the first mortgage holder was required to limit its interest to the contract rate. *In re Consolidated Ltd. Partnership*, 152. B.R. 452 (Bankr. Md. 1993). BB&T seeks a 100% increase.

One court enumerated pertinent factors to be considered when determining the appropriateness of default interest rates: (1) no realistic risk of non-payment; (2) no evidence that the prevailing contract rate was below the market rate; (3) a realistically quick, orderly reorganization; (4) distribution not likely to reach shareholders; (5) unnecessary delay or obstruction by the secured creditor. *In re W.S. Sheppley and Co.*, 62 B.R. 271, 277 (Bankr. N.D. Iowa 1986).

In the case at bar, there is no realistic risk of non-payment. Throughout this case, the contract rates of BB&T have been greater than the prevailing market rates. This case has moved along in an orderly manner and delays have been occasioned, in many circumstances, by conflicts in attorneys'

2

calendar and by the death of Debtor's counsel's father. The Debtor was responsible for none of these delays.

BB&T has received substantial payment during the course of this case and its companion partnership cases: Rolling Ridge Farms and Perkins & Perkins Farms[3]. In the Rolling Ridge case, in 2016, it received $622,922.52 for crops and $349,498.00 for ARC payments. In the Perkins & Perkins case, it received $1,300,000, less closing costs, from the 2015 sale of a farm; approximately $406,040, in 2015, from the sale of equipment and $237,528, in 2016, from the sale of equipment. While it is true that these payments came from the liquidation of collateral, BB&T had a blanket lien on the Debtor's property (except her 2015 crops). It would be difficult to imagine that payment could have come from any other source than the sale of BB&T collateral.

Most importantly, the allowance of the default interest rate will reduce payments to unsecured creditors to a pittance. The payment to unsecured creditors is based upon the amount of income which remains after payment of living expenses, farming expenses, and secured creditors. The effect of granting BB&T its 100% rate increase, for the months that the case has been pending, will be to increase its plan payment. The effect of increasing the plan payment is to decrease the unsecured creditors' payment.[4]

BB&T has not been at risk during this case. There is no reason to grant BB&T a windfall at a cost to the unsecured creditors.

As to the remainder of BB&T's motion, the Debtor withdraws her objection to the attorney fees which have been included in the itemized invoices. She reserves her right to object to the

---

[3]Case Numbers 15-10384 and 15-10383, respectively.

[4]The Debtor's plan projected payment to unsecured and administrative creditors of $18,950.63, annually. If BB&T is granted the relief it requests, its payment will increase by $22,390.06. Nothing would be available for unsecured creditors.

3

unbilled time not included in the invoices. She objects to the unidentified "Other Charges and Premiums" which total $9,904.81. The Court, other creditors and the Debtor are entitled to know the source of these charges before they are allowed.

Respectfully submitted,

/s/
Sandra D. Freeburger
DEITZ, SHIELDS & FREEBURGER, LLP
101 First Street, 2nd Fl (42420)
P. O. Box 21
Henderson, KY  42419-0021
Tel:   (270) 830-0830
Fax:   (270) 830-9115
Email: sfreeburger@dsf-atty.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that a true and correct copy of the foregoing was transmitted by the Court to the parties who have consented to electronic notice according to local rule on December 11, 2016.

/s/
Sandra D. Freeburger

4